BLANCHE LUDWIG, appellant,

*v.*

ARTHUR LUDWIG, ADAM J. LUDWIG and BRIDGET S. LUDWIG, respondents.

[Décided January 19th, 1923.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Buchanan, who filed the following memorandum on the issue of divorce prayed for by each of the parties to this suit as against the other:

"Petition by the wife and counter-claim by the husband both on the ground of desertion.

"The proofs do not substantiate either party's claim as to willfulness and obstinacy, and both petition and counter-claim will be denied as to the divorce.

"The matter of the custody of the child will be continued for further testimony."

After the taking of further testimony the vice-chancellor delivered the following oral conclusions on the issue of the custody of the child:

"I am satisfied by the testimony and the evidence in the entire case that the custody of the child, which the wife had for a time in Rochester, was, as a practical matter, abandoned by her in 1916, when she sent it to the grandparents, and abandoned it, not to the father of the child, but to the grandfather. And the custody so remained even after the wife came back to New Brunswick and lived with her husband again. The child was not with them. Custody was resumed by both parents when they went to Rochester in 1918. It was abandoned by the husband when he left on August 2d, 1918. After that he made no effort to get the child, or to see it; he never wrote to it or contributed to its

support, or evince any interest in it whatsoever. Although the wife retained custody, it was little more than in name. She made no effort to keep the child with herself, but boarded it out and left its care and education to Mrs. Lauer, going to see it only a few times a week. I cannot feel that she has any great love or care for the child, and I think that in her keeping of it in Rochester, and her present contest, she was and is actuated principally by antagonism to her husband and her husband's people.

"I am satisfied from the evidence that the child's welfare will best be conserved (and that is the thing after all, which is the motive and guiding principle which actuates this court in such cases), that the child's welfare will best be conserved by having his custody given to the grandfather, for the present at least; and I say I see no obstacle in the way of that, by reason of the conduct of the father and mother heretofore. The father, as I have said, abandoned the custody in 1918, and there is a statutory bar to any custody by the mother, under the circumstances of this case. Section 7 of the act of 1902 (*P. L. p. 263*) provides that where a child is a native of this state, as this child is, it shall not be removed from the state 'against its own consent if of suitable age to signify the same, nor while under that age without the consent of both parents, unless the court, upon cause shown, shall otherwise order.'

"There may be some doubt as to the child being of 'suitable age.' He is about nine years old, and seems quite intelligent, although possibly a little young for his years. If he be deemed of suitable age, his desire, as stated to me, was to remain here in New Jersey at the grandfather's, where the father also is at present residing. If he be not deemed of suitable age, the consent of the father is lacking to have him removed from the state. There is not the slightest doubt in my mind that the wife's residence is in Rochester, and her frankly-expressed intention, in her testimony, was to take the child back to Mrs. Lauer's in Rochester. Certainly no cause has been shown, to my mind, to induce or justify the court to 'otherwise order'—quite the contrary.

"The order, therefore, will be that the custody be given to the grandfather, who has been made a party to the suit—the legal custody—and there being no evidence before me that any change in the situation as to the residence of the father or mother has occurred since the taking of the testimony upon the last hearing, the decree will provide that both the father and mother shall have the right of access to the child at all reasonable times, for visitation.

"There will also be a provision that the father shall contribute to the support of this child. I think I will make the amount $7.50 per week that he shall pay to his father towards the expense of the support of the child."

*Mr. Theodore Strong,* for the appellant.

*Messrs. Russell E. & A. Dudley Watson,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the conclusions in the court below by Vice-Chancellor Buchanan.

*For affirmance* — THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON—14.

*For reversal*—None.